*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ESTATE OF SIMONE YOUNG KIM, by its Personal Representative, SERENA ALEXANDER, CHU CHA KIM, and AMBROSUS H. KIM, ) ) ) ) | |
| ) | Supreme Court No. S-14077 |
| Appellants, ) | |
| ) | Superior Court No. 1JU-08-00761 CI |
| v. ) | |
| ) | O P I N I O N |
| RAY COXE, d/b/a RAYCO SALES, and JASON CODAY, ) ) | |
| ) | No. 6752 - February 22, 2013 |
| Appellees, ) ) | |
| and ) ) | |
| UNITED STATES OF AMERICA, ) ) | |
| Intervenor- ) Appellee. ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Mark Choate, Choate Law Firm L.L.C., Juneau, and Jonathan E. Lowy and Daniel R. Vice, Brady Center To Prevent Gun Violence, Washington D.C., for Appellants. Anthony M. Sholty and Lael A. Harrison, Faulkner Banfield, P.C., Juneau, for Appellee Coxe. No appearance by Appellee Coday. Richard Pomeroy, Assistant United States Attorney, and Karen Loeffler, United States

Attorney, Anchorage, and Benjamin S. Kingsley, Attorney, Appellate Staff, Civil Division, and Tony West, Assistant Attorney General, Washington D.C. for Intervenor-Appellee United States of America.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

Jason Coday shot and killed Simone Kim with a rifle obtained from Ray Coxe's gun store. Kim's Estate (the Estate) brought a wrongful death action against Coxe, alleging that Coxe negligently or illegally provided Coday the rifle. Coxe defended in part by asserting immunity under the Protection of Lawful Commerce in Arms Act[1] (PLCAA). The Estate argued against applying the PLCAA and alternatively that it was unconstitutional. The superior court ruled that the PLCAA was constitutional and, interpreting and applying the PLCAA's immunity provisions to the facts of this case, granted summary judgment dismissing the Estate's claims against Coxe. The Estate appeals.

We affirm the superior court's ruling that the PLCAA is constitutional and its interpretation of the PLCAA, but because it is unclear whether certain evidence before the superior court actually was or should have been considered when granting summary judgment dismissing the Estate's claims, we vacate the summary judgment ruling and remand for further consideration.

---

[1]    15 U.S.C. §§ 7901-7903 (2006).

## II. FACTS AND PROCEEDINGS

### A. Facts

Rayco Sales is a licensed gun shop in Juneau owned and operated by Ray Coxe. On an August 2006 afternoon, Jason Coday entered Rayco. Present in Rayco were Coxe, Rayco employee Bill Driver, and Rayco customer Stan Bickham.

Coxe thought Coday looked like he was "living in the woods or had just got off the ferry" because he had on a backpack and had a sleeping bag in a plastic bag tied around his waist. Coxe, Driver, and Bickham all testified that they did not notice any appearances or behavior indicating danger, drug use, or potential for violence.

Coday asked Driver if Rayco stocked Ruger10/22 rifles. Coday then asked Bickham about differences between several .22 rifles. Coday told Bickham he was going to do some target shooting, and was wondering about the various rifles' accuracy and prices.

Coday then approached Coxe and asked to look at .22 rifles. Fearing Coday's backpack might knock over merchandise, Coxe asked Coday to remove it. Coday complied and the two went behind the sales counter, where Coxe explained the differences between several .22 rifles. Coday seemed most interested in a Ruger 10/22, and Coxe showed Coday a used rifle priced at $195. After discussing the rifles and prices, Coday indicated he would have to think about a purchase. He went back to the public side of the sales counter and put his backpack on. Thinking Coday was leaving, Coxe went to the back of the store to attend other matters.

Driver later noticed a rifle missing and two $100 bills on the counter. Driver asked Coxe if he had sold Coday the rifle. Coxe verified the rifle was missing and then drove his truck around the neighboring area in an unsuccessful attempt to find Coday. At some point either Coxe or an employee called the Juneau Police Department. Coxe reported the rifle stolen, and on the advice of a police officer, deposited the $200

in the bank as a sale. Rayco had two videotape surveillance systems, but neither captured any footage of the day's events.

Two days later Coday shot and killed Simone Kim with the rifle.

**B.    Proceedings**

In 2008 the Estate brought a wrongful death action against Coxe and Coday. Coday did not appear and default was entered against him.

The Estate contended that Coxe had illegally or negligently provided Coday the firearm. Coxe moved for summary judgment based on the PLCAA, which prohibits certain civil actions for damages against a manufacturer or seller of a firearm in connection with a third party's criminal or unlawful misuse of the firearm.[2] The Estate opposed the motion, arguing the PLCAA did not apply, but that if it did, it was unconstitutional. The Estate first argued the PLCAA did not immunize gun dealers from their own negligent acts. The Estate also argued there were disputes of material fact relevant to claims excepted from the PLCAA — negligent entrustment, negligence per se, and knowing violations of laws "applicable to the sale or marketing of [firearms]."[3] On the constitutional issues, the Estate argued the PLCAA violated the Tenth Amendment, separation of powers, due process, and equal protection.

After oral argument the superior court granted Coxe's motion for summary judgment. The Estate appeals the superior court's ruling on the PLCAA's constitutionality and construction, as well as the grant of summary judgment to Coxe based on the PLCAA. The United States intervened to defend the PLCAA's constitutionality, but takes no position on PLCAA interpretations or its application to this case.

---

[2]    15 U.S.C. §§ 7902-7903.

[3]    15 U.S.C. § 7903(5)(A)(ii)-(iii).

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying our independent judgment.[4] We also review issues of constitutional interpretation de novo, applying our independent judgment,[5] and similarly apply our independent judgment to the interpretation of federal statutes.[6]

## IV. DISCUSSION

### A. The PLCAA Bars Negligence Actions Not Falling Under An Enumerated Exception.

The Estate assigns error to the superior court's interpretation of the PLCAA as barring general negligence actions. The Estate argues that the PLCAA provides immunity only in cases where the harm is caused solely by others, relying primarily on the codified Congressional findings and purposes.[7] Coxe responds that the superior court correctly interpreted the PLCAA, consistent with the substantive provisions' plain meaning.

The PLCAA's substantive portion, 15 U.S.C. § 7902, titled "Prohibition on bringing of qualified civil liability actions in Federal or State court," provides that: "A

---

[4] *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 607 (Alaska 2011) (citing *Burnett v. Covell*, 191 P.3d 985, 987 (Alaska 2008)).

[5] *Stephanie F. v. George C.*, 270 P.3d 737, 746 (Alaska 2012) (quoting *State v. Alaska Civil Liberties Union*, 978 P.2d 597, 603 (Alaska 1999) and *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007)).

[6] *State v. Native Vill. of Tanana*, 249 P.3d 734, 737 (Alaska 2011); *John v. Baker*, 982 P.2d 738, 744 (Alaska 1999) (citing *In re T.N.F.*, 781 P.2d 973, 975 (Alaska 1989)).

[7] 15 U.S.C. § 7901.

qualified civil liability action may not be brought in any Federal or State court."[8] "Qualified civil liability action" is defined as "a civil action . . . brought by any person against a . . . seller of a [firearm] . . . for damages . . . resulting from the criminal or unlawful misuse of a [firearm] by the person or a third party."[9] The definition excludes from "qualified civil liability action" those actions based on negligence per se, negligent entrustment, and knowing violations of state or federal statutes related to firearms.[10]

A plain reading of this text supports a prohibition on general negligence actions — including negligence with concurrent causation. The statutory exceptions do not include general negligence, and reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage.

The Estate argues the term "resulting from the criminal or unlawful misuse" in § 7903(5)(A) must be read in light of Congressional findings and purposes codified at § 7901, which provides: "Congress finds . . . [t]he possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system"[11] and "[t]he purposes of this chapter are . . . [t]o prohibit causes of action against . . . dealers . . . of firearms . . . for the harm solely caused by the criminal or unlawful misuse of firearm products . . . by others when the product functioned as designed and intended."[12]

---

[8]    15 U.S.C. § 7902(a).

[9]    15 U.S.C. § 7903(5)(A).

[10]    15 U.S.C. § 7903(5)(A)(i)-(iii).

[11]    15 U.S.C. § 7901(a)(6).

[12]    15 U.S.C. § 7901(b)(1).

When interpreting statutes, "we must, whenever possible, interpret each part or section of a statute with every other part or section, so as to create a harmonious whole."[13] We presume that Congress "intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[14] However a statutory preamble "can neither restrain nor extend the meaning of an unambiguous statute; nor can it be used to create doubt or uncertainty which does not otherwise exist."[15] The Estate's construction would elevate the PLCAA's preamble over the substantive portion's clear language.

In interpreting a statute, we do "not stop with the plain meaning of the text . . . 'even if a statute is facially unambiguous.' "[16] Rather, we apply "a sliding scale approach, where '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[17] The Estate points out

---

[13] *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 629 (Alaska 2007) (quoting *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999)).

[14] *Id.* (quoting *Kodiak Island Borough*, 991 P.2d at 761).

[15] *Commercial Fisheries Entry Comm'n v. Apokedak*, 680 P.2d 486, 488 n.3 (Alaska 1984) (quoting 2A C. SANDS, STATUTES AND STATUTORY CONSTRUCTION § 47.04 (1973)); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 245 (1989) (explaining that Congress's expressed purpose does not alter plain statutory language); *Jogi v. Voges*, 480 F.3d 822, 834 (7th Cir. 2007) (citing authority holding titles and preambles do not control over plain statutory language).

[16] *State, Commercial Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 762 (Alaska 2012) (quoting *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011)).

[17] *Id.* (quoting *Gov't Emps. Ins. Co. v. Graham–Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)); *see also United States v. Poliak*, 823 F.2d 371, 372 (9th Cir. 1987) ("The
(continued...)

portions of the PLCAA's legislative history supporting its interpretation. For example, Senator Craig, the PLCAA's sponsor, stated: "If manufacturers or dealers break the law or commit negligence, they are still liable."[18] Coxe points out portions of the legislative history supporting his position. For example, Senator Reed stated: "This bill goes way beyond strict liability. It says simple negligence is out the door . . . ."[19] Additionally, as another court has noted, a PLCAA amendment creating a simple negligence exception was offered but failed to pass.[20]

This history does not indicate a strong legislative intent in favor of either construction. Even if legislative history is "somewhat contrary" to the plain meaning of a statute, plain meaning still controls.[21] The PLCAA's legislative history is not "somewhat contrary"; it is indeterminate, and it does not control the statute's interpretation.

The Estate also notes that, in contrast to the final version, a prior version of the legislation that failed to pass the Senate two years before the PLCAA's passage

---

[17]     (...continued)
plain meaning of the words used controls, absent a clearly expressed legislative intent to the contrary."); *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012) ("We have held that 'the plainer the language of the statute, the more convincing any contrary legislative history must be . . . to overcome the statute's plain meaning.'" (quoting *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991))).

[18]     151 Cong. Rec. S9099 (daily ed. July 27, 2005).

[19]     151 Cong. Rec. S9085 (daily ed. July 27, 2005).

[20]     *Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1294 & n.23 (C.D. Cal. 2006) (noting statements of Senators Reed, Hutchison, and Craig).

[21]     *Oels*, 279 P.3d at 597 (citing *Coughlin v. Gov't Emps. Ins. Co. (GEICO)*, 69 P.3d 986, 988 (Alaska 2003)).

did not contain the term "solely" in the purposes section.[22] It couples this change with the statutory interpretation maxim that the court is "obliged to give effect, if possible, to every word Congress used."[23] But as noted above, the Estate's construction seeks to elevate the preamble over the substantive portion of the statute, giving effect to one word in the preamble at the expense of making the enumerated exceptions meaningless.

The Estate also argues federal statutes do not preempt state common law "unless that was the clear and manifest purpose of Congress."[24] Coxe responds that the Estate's argument relies on authorities discussing implied preemption, not express preemption. Coxe is correct: when a federal law contains an express preemption clause, the court "focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress'[s] preemptive intent."[25] The PLCAA expressly preempts state common law by requiring that state courts immediately dismiss qualified civil liability actions.[26]

In light of the PLCAA's text and legislative history, Congress's purpose and intent was to bar any qualified civil liability action not falling within a statutory exception. Our conclusion is supported by other courts that have held the PLCAA bars

---

[22]     *Compare* S. 1805, 108th Cong. § 2(b)(1) (2003), *with* 15 U.S.C. § 7901(b)(1).

[23]     *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

[24]     *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

[25]     *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

[26]     15 U.S.C. § 7902.

simple negligence claims.[27]  The Estate attempts to distinguish *Ileto v. Glock*,[28] the authority the superior court relied on, arguing that the plaintiffs in *Ileto* did not allege a statutory violation and that the claim was against manufacturers and distributors, not a dealer.  These differences do not change *Ileto*'s holding that the PLCAA bars a simple negligence claim.[29]

## B.     The PLCAA Is Constitutional.

"[A] party raising a constitutional challenge to a statute bears the burden of demonstrating the constitutional violation.  A presumption of constitutionality applies, and doubts are resolved in favor of constitutionality."[30]

### 1.     The doctrine of constitutional avoidance is not applicable.

The Estate argues that the superior court erred by not interpreting the PLCAA in a manner avoiding constitutional questions arising from the elimination of general negligence claims.  Coxe responds that the doctrine of constitutional avoidance applies only where an ambiguous statute can be interpreted in a manner either violating the constitution or not.  Coxe argues the PLCAA is not ambiguous and does not violate

---

[27]     *See Ileto v. Glock*, 565 F.3d 1126, 1135-36 (9th Cir. 2009); *Adames v. Sheahan*, 909 N.E.2d 742, 760-62 (Ill. 2009) (analyzing a failure to warn claim); *see also Gilland v. Sportsmen's Outpost, Inc.*, 2011 WL 2479693, at *16 (Conn. Super. May 26, 2011); *cf. Ryan v. Hughes-Ortiz*, 959 N.E.2d 1000, 1006-07 (Mass. App. 2012) (barring qualified civil liability action that does not fall under PLCAA enumerated exceptions).

[28]     565 F.3d 1126.

[29]     *Id.* at 1135-36.

[30]     *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 1000-01 (Alaska 2011) (quoting *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001)); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 669 (9th Cir. 2002) ("Statutes are presumed constitutional.") (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

the constitution.  The United States echoes Coxe's position.

The doctrine of constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text."[31]  Under this tool, "as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, [this court's] plain duty is to adopt that which will save the Act."[32]  But, as discussed above, the PLCAA is not ambiguous.  And, as discussed below, the PLCAA is not unconstitutional.  The superior court therefore did not err with respect to the doctrine of constitutional avoidance.

### 2.    The PLCAA does not infringe on Alaska's sovereign right to allocate its lawmaking function under the Tenth Amendment.

The Estate argues that the PLCAA violates Alaska's sovereignty by "dictating to Alaska how it must conduct its lawmaking function with respect to gun seller liability."  The Estate contends it is beyond Congress's power to prohibit Alaska courts from imposing common law negligence standards while simultaneously allowing liability to be imposed if the legislature adopts statutory standards.[33]  Coxe and the United States counter that the preemptive effect of the PLCAA is within Congress's power and the PLCAA does not commandeer state government.

Under the Tenth Amendment "Congress cannot compel the States to enact

---

[31]    *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005) (citing *Rust v. Sullivan*, 500 U.S. 173, 191 (1991)); *see also Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 184 (Alaska 2009) (interpreting ambiguous statute to avoid constitutional problems).

[32]    *Rust*, 500 U.S. at 190 (1991) (quoting *Blodgett v. Holden*, 275 U.S. 142, 148 (1927)).

[33]    *See* 15 U.S.C. § 7902 (barring qualified civil liability actions in state courts); 15 U.S.C. § 7903(5)(A)(ii)-(iii) (creating exceptions for negligence per se and knowing violations of state firearms statutes from the definition of qualified civil liability actions).

or enforce a federal regulatory program."[34] But "state courts cannot refuse to apply federal law — a conclusion mandated by the terms of the Supremacy Clause."[35] And where Congressional action does not commandeer states or state actors, the Tenth Amendment reflects Congress's limitation to act within its enumerated powers.[36]

The PLCAA does not *compel* Alaska's legislature to enact any law, nor does it commandeer any branch of Alaska's government. Although expressly preempting conflicting state tort law, the PLCAA *allows* Alaska's legislature to create liability for harms proximately caused by knowing violations of statutes regulating firearm sales and marketing.[37] The Estate does not challenge Congress's power to enact the PLCAA, and because it is within Congress's enumerated powers and does not commandeer state actors, the PLCAA does not violate the protections of the Tenth Amendment. We note that the Second Circuit Court of Appeals and the Illinois Supreme Court have come to the same conclusion and rejected Tenth Amendment challenges to the PLCAA.[38]

### 3. The PLCAA does not violate separation of powers.

---

[34] *Printz v. United States*, 521 U.S. 898, 935 (1997); *see also New York v. United States*, 505 U.S. 144, 149 (1992).

[35] *Printz*, 521 U.S. at 928 (citing *Testa v. Katt*, 330 U.S. 386 (1947)).

[36] *New York v. United States*, 505 U.S. 144, 155-56 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress.").

[37] 15 U.S.C. § 7903(5)(A)(iii).

[38] *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008); *Adames v. Sheahan*, 909 N.E.2d 742, 764-65 (Ill. 2009).

The Estate argues the PLCAA is unconstitutional under the separation of powers principles announced in *United States v. Klein*[39] and *Plaut v. Spendthrift Farm, Inc.*[40] because Congress directly instructed the courts to dismiss all cases falling into a certain category. Coxe and the United States respond that the PLCAA merely preempts state law and creates a new legal standard. The United States adds that *Klein* and *Plaut* apply only if Congress attempts to decide a pending case's outcome and that the Estate's wrongful death action was filed three years after the PLCAA's passage. The United States also argues that "separation of powers principles constrain Congress's conduct only with respect to Article III federal courts."

*Klein*'s exact holding is somewhat confusing,[41] but the Estate is correct that *Klein* stands for the general proposition that Congress cannot infringe on judicial power.[42] In *Plaut* the United States Supreme Court clarified the limitation on Congress's ability to affect a pending case:

> Having achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not

---

[39] 80 U.S. 128 (1871).

[40] 514 U.S. 211 (1995).

[41] *See* Gordon G. Young, *Congressional Regulations of Federal Courts' Jurisdiction and Processes:* United States v. Klein *Revisited*, 1981 WIS. L. REV. 1189, 1195 (1981) ("The *Klein* opinion combines the clear with the delphic. Chief Justice Chase's excessively broad and ambiguous statements for the majority provide the delphic elements in *Klein*. His statements have permitted *Klein* to be viewed as nearly all things to all men.").

[42] *Klein*, 80 U.S. at 146-47; *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 190 (5th ed. 2007) (noting that *Klein* "stands for the much more limited principle that Congress cannot limit the Supreme Court's jurisdiction in a manner that violates other constitutional provisions").

declare by retroactive legislation that the law applicable to that very case was something other than what the courts said it was.[43]

The Estate is essentially correct that these cases hold that "Congress cannot direct the outcome of a pending case without changing the substantive law underlying the suit." But as the United States points out, the PLCAA was passed in 2005 and the Estate did not file suit until 2008. The PLCAA created new substantive law governing the Estate's claims and does not violate the principles announced in *Klein* and *Plaut*.

Every other court to consider a separation of powers challenge to the PLCAA has rejected it.[44] The Second Circuit Court of Appeals stated the PLCAA "permissibly sets forth a new rule of law that is applicable both to pending actions and to future actions."[45] The Ninth Circuit Court of Appeals stated "[t]he PLCAA applies only to pending and future cases and does not purport to undo final judgments of the judiciary."[46] We agree, and because we hold the PLCAA does not violate separation of powers in this case, we do not consider the United States's argument that separation of powers principles do not apply to the relationship between Congress and state courts.

### 4. The PLCAA does not violate federal due process by denying the Estate's right to seek redress in the courts.

The Estate argues that the PLCAA violates federal rights of access to the courts by "wholly eliminating the common law rights of Plaintiffs against particular

---

[43] *Plaut*, 514 U.S. at 227 (emphasis omitted).

[44] *Ileto v. Glock*, 565 F.3d 1126, 1139-40 (9th Cir. 2009); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 395-96 (2d Cir. 2008); *Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 184 (D.D.C. 2009); *Dist. of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 172-73 (D.C. 2008).

[45] *City of New York*, 524 F.3d at 395.

[46] *Ileto*, 565 F.3d at 1139.

tortfeasors who have caused them harm, without providing any alternate remedy." Coxe counters that the PLCAA limits, but does not eliminate, common law remedies. The United States does not directly address the remedy elimination issue, instead framing the court access issue as predicated on the existence of an underlying cause of action. This raises two questions: (1) does the PLCAA infringe on the constitutional right of access to the courts; and (2) does Congress have the power to eliminate a common law right?

> **a.    The PLCAA does not infringe on the constitutional right of access to the courts**.

The federal constitutional right of access to the courts is a fundamental right[47] of uncertain origin.[48] But for a potential plaintiff, the right to access requires an "underlying cause of action."[49] The Second Circuit Court of Appeals has rejected an identical right to access challenge to the PLCAA, stating: "The PLCAA immunizes a specific type of defendant from a specific type of suit. It does not impede, let alone entirely foreclose, general use of the courts by would-be plaintiffs . . . ."[50]

We agree with the Second Circuit Court of Appeals — the PLCAA does not infringe on the Estate's right to access the courts.

> **b.    Because Congress has not completely eliminated a common law remedy, we do not decide whether doing so is within Congress's powers.**

The Estate first cites a dissenting opinion in *Fein v. Permanente Medical*

---

[47]    *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004).

[48]    *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (citing cases describing different constitutional provisions to which right has been tied).

[49]    *Id.* at 415.

[50]    *City of New York*, 524 F.3d at 398.

*Group*[51] to support its argument that Congress does not have the power to eliminate common law rights. The precedential value of a dissent from a dismissal of certiorari aside, the *Fein* dissent simply noted the issue was undecided.[52] The Estate next cites *Marbury v. Madison*,[53] *Poindexter v. Greenhow*,[54] and *Truax v. Corrigan*[55] in support of its position. But to the extent these cases have not been overruled in relevant part or the statements relied upon are not dicta, they are distinguishable: each discusses the elimination of a previously vested property right. As the United States Supreme Court has stated: "[A] person has no property, no vested interest, in any rule of the common

---

[51]   474 U.S. 892 (1985) (White, J., dissenting from dismissal of certiorari).

[52]   *Id.* at 894-95. Justice White stated:

Whether due process requires a legislatively enacted compensation scheme to be a *quid pro quo* for the common-law or state-law remedy it replaces, and if so, how adequate it must be, thus appears to be an issue unresolved by this Court, and one which is dividing the appellate and highest courts of several States.

[53]   5 U.S. (1 Cranch) 137, 163 (1803) ("[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES *23)).

[54]   114 U.S. 270, 303 (1885) ("No one would contend that a law of a state, forbidding all redress by actions at law for injuries to property, would be upheld in the courts of the United States, for that would be to deprive one of his property without due process of law.").

[55]   257 U.S. 312, 330 (1921) ("[A] statute whereby serious losses inflicted by such unlawful means are in effect made remediless, is, we think, to disregard fundamental rights of liberty and property and to deprive the person suffering the loss of due process of law.").

law."[56]

Other courts considering similar PLCAA challenges have rejected them.[57] The Ninth Circuit Court of Appeals noted the absence of case law holding that the elimination of common law remedies is a due process violation and explained that the PLCAA only limited, not eliminated, common law remedies.[58] The District of Columbia Court of Appeals held that because "Congress did not deprive injured persons of all potential remedies against manufacturers or sellers of firearms that discharge causing them injuries," it did not need to consider a claim that Congress could not eliminate a cause of action.[59]

We follow these courts' reasoning and reject the Estate's PLCAA challenge on these grounds.

### 5.     The PLCAA does not violate equal protection.

The Estate argues the PLCAA violates the Fifth Amendment's guarantee of equal protection under the law. It argues the PLCAA should be subject to strict scrutiny review because it violates the fundamental right of access to the courts. In the alternative, the Estate argues the PLCAA cannot withstand even rational basis review. It argues the PLCAA is not rational because it "irrationally shields from liability negligent gun sellers who Congress intended not to shield" and violates equal protection by treating potential plaintiffs differently depending on applicable state law.

---

[56]     *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 88 n.32 (1978) (quoting *Second Emp'rs Liab. Cases*, 223 U.S. 1, 50 (1912)).

[57]     *Ileto. v. Glock*, 565 F.3d 1126, 1143-44 (9th Cir. 2009); *Dist. of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 177 n.8 (D.C. 2008).

[58]     *Ileto*, 565 F.3d at 1143-44.

[59]     *Dist. of Columbia*, 940 A.2d at 177 n.8.

Coxe argues rational basis review is the correct standard, plaintiffs in different states are not similarly situated, and the PLCAA passes rational basis review. The United States also argues for the application of rational basis review and that the PLCAA passes such review.

### a. Rational basis review applies to the Estate's challenge.

Because this case involves application of the equal protection clause of the Fifth Amendment to the United States Constitution, we are bound to use the federal tiered approach rather than our sliding scale approach.[60] Under the federal approach, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," the law is presumed valid and must only be "rationally related to a legitimate state interest."[61] Courts considering identical challenges to the PLCAA have applied rational basis review.[62] We agree with these courts — because the PLCAA does not implicate a fundamental right or a suspect class, rational basis review applies to the Estate's equal protection challenge.

### b. The PLCAA passes rational basis review.

"The first step in equal protection analysis is to identify the . . . classification of groups."[63] We must then identify and compare similarly situated

---

[60]    *See State v. Erickson*, 574 P.2d 1, 11-12 (Alaska 1978) (adopting Alaska's sliding scale test for equal protection while noting being bound by United States Supreme Court precedent for federal constitutional questions).

[61]    *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

[62]    *Ileto*, 565 F.3d at 1140-41; *City of New York v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244, 294-95 (E.D.N.Y. 2005).

[63]    *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (quoting *Country Classic Dairies, Inc. v. State of Mont., Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir.1988)).

groups.[64] The "similarly situated" analysis references the subject of the law and any difference must pre-exist the statutory classifications.[65] The Estate argues the PLCAA classifies potential plaintiffs by reference to the laws of individual states, and treats similarly situated potential plaintiffs differently based on different state law. Coxe and the United States argue that potential plaintiffs in different states are not similarly situated. Because we conclude below that the PLCAA passes rational basis review, we assume without deciding that it treats similarly situated groups differently.

The equal protection clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."[66] Under rational basis review a statute must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[67] "[B]arring irrational or arbitrary conduct, Congress can adjust the incidents of our economic lives as it sees fit. Indeed, the Supreme Court has not blanched when settled economic expectations were upset, as long as the legislature was pursuing a rational policy."[68] Here, Congress found certain types of tort suits threatened constitutional rights, destabilized industry, and burdened interstate commerce.[69] Protecting constitutional rights and interstate commerce is a legitimate purpose and barring certain types of tort suits while allowing others is a rational way to pursue this legitimate purpose. Other courts have rejected equal protection challenges

---

[64] *Id.*

[65] *Williams v. Vermont*, 472 U.S. 14, 27 (1985).

[66] *F.C.C. v. Beach Cmmc'ns, Inc.*, 508 U.S. 307, 313 (1993).

[67] *Id.*

[68] *Ileto v. Glock*, 565 F.3d 1126, 1140 (9th Cir. 2009) (quoting *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001)).

[69] 15 U.S.C. § 7901(a)(6)-(7).

to the PLCAA,[70] and again, we agree — the PLCAA does not violate the Estate's equal protection right.

> **C. We Remand For The Superior Court's Further Review Of The Evidence That Should Be Considered For The Summary Judgment Motion On The Estate's Claims Under PLCAA Exceptions.**

> **1. Overview**

The Estate asserted claims based on knowing violations of laws related to the sales of firearms, negligence per se, and negligent entrustment, and argues that a genuine dispute of material fact precluded summary judgment dismissing these claims. Coxe responds that there is no dispute of material fact, only "unsupported assumptions and speculation." This dispute is whether on the facts of this case a *reasonable* inference can be drawn that Coxe voluntarily transferred or illegally sold Coday the rifle, or whether the only reasonable inference to be drawn is that Coday stole the rifle from Coxe.

> **2. Theft of a firearm does not support liability under claims excepted from the PLCAA.**

> **a. Knowing violation of firearms laws and negligence per se**

The PLCAA allows an action against a firearms dealer who "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."[71] The PLCAA also allows actions for negligence per se.[72] Because the Estate only alleged violations of statutes addressing the sale and marketing of firearms, the two are

---

[70] *Ileto*, 565 F.3d at 1140-41; *City of New York v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244, 294-95 (E.D.N.Y. 2005).

[71] 15 U.S.C. § 7903(5)(A)(iii).

[72] 15 U.S.C. § 7903(5)(A)(ii).

interchangeable in this context and we discuss them together.

The Estate asserts a jury could find Coxe knowingly violated firearms laws even if Coday stole the rifle. It asserts violations of laws requiring a background check,[73] completion of a transaction record form,[74] precluding transfers if there is reasonable cause to believe the transferee cannot legally possess a firearm,[75] and prohibiting aiding and abetting unlawful possession.[76] Because these laws apply to "transfers" or "disposals" of firearms in addition to sales,[77] the Estate argues they apply to thefts, citing *United States v. Monteleone*[78] for the proposition that a transfer or disposal of a firearm "occurs when a person 'comes into possession, control, or power of disposal of a firearm.' "[79] Coxe responds that the statutory requirements apply only to intentional transfers.

A firearms dealer must initiate a background check prior to the transfer of

---

[73]      18 U.S.C. § 922(t) (2006).

[74]      18 U.S.C. § 922(m); 27 C.F.R. § 478.124.

[75]      18 U.S.C. § 922(d).

[76]      18 U.S.C § 2(a); 18 U.S.C. § 922(g).

[77]      18 U.S.C. § 922(t) (requiring that licensed dealers conduct background checks before *transferring* firearms); 27 C.F.R. § 478.124 (requiring a firearm transaction record, Form 4473, before a licensed dealer *disposes* of a firearm); 18 U.S.C. § 922(d) (barring sales and *disposals* of firearms when there is reasonable cause to believe the transferee cannot legally receive the firearm).

[78]      77 F.3d 1086 (8th Cir. 1996).

[79]      *Id.* at 1092 (quoting *Huddleston v. United States*, 415 U.S. 814, 823 (1974)). The Estate argues Coxe "violated his duty to take affirmative steps to keep guns out of the hands of criminals." But no statutes require such measures.

a firearm.[80] A knowing violation of this requirement is a crime.[81] Likewise, a knowing violation of the transaction record requirement is a crime.[82] And a knowing violation of the prohibition on transferring a firearm to a prohibited person is a crime.[83] Because each statutory violation requires a knowing state of mind, we do not agree that a dealer faces criminal liability under these statutes when a firearm is stolen.

The Estate's reliance on *Monteleone* is misplaced. In that case the Eigth Circuit Court of Appeals explained that "dispose" means to transfer a firearm so the transferee acquires possession, and explained that Monteleone disposed a firearm when he gave it to his half-brother.[84] Unlike the case before us, there was no dispute in *Monteleone* whether the transferor knew that the transferee would possess the firearm.[85] Coxe, however, asserts that the firearm was stolen and he did not know that Coday would acquire it.

We agree with the superior court that the Estate's "argument requires the conclusion that a gun shop is required to perform a background check [and] complete a

---

[80]     18 U.S.C. § 922(t).

[81]     18 U.S.C. § 924(a)(5) ("Whoever knowingly violates subsection (s) or (t) of section 922 shall be fined under this title, imprisoned for not more than 1 year, or both.").

[82]     18 U.S.C. § 922(m) ("It shall be unlawful for any licensed . . . dealer . . . knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record . . . required . . . pursuant to section 923 of this chapter . . . .").

[83]     18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection . . . (d) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.").

[84]     *United States v. Monteleone*, 77 F.3d 1086, 1088, 1092 (8th Cir. 1996).

[85]     *Id.* at 1088-89.

federal firearms form before having a gun stolen." The more logical conclusion is that a firearm theft precludes a dealer's liability under the PLCAA's knowing violation of statute and negligence per se exceptions. For this same reason, the Estate's arguments regarding aiding and abetting an unlawful disposal are also unavailing — for aiding and abetting to apply, a defendant must "participate in [the criminal act] as in something that he wishes to bring about, that he seek by his action to make it succeed."[86] A theft precludes aiding and abetting.

The Estate's knowing violation and negligence per se claims cannot survive under Coxe's version of the events — the firearm's theft. But if there is a factual dispute whether Coday stole the rifle or whether Coxe sold the rifle or otherwise knowingly transferred it to Coday, summary judgment was not appropriate on these claims.

### b. Negligent entrustment

The Estate argues the negligent entrustment exception could apply because a jury could find Coxe voluntarily transferred the rifle to Coday through a sham transaction and because, even under Coxe's version of events, he supplied Coday the rifle. Coxe responds that only conjecture supports the voluntary transfer assertion, and negligent entrustment requires a knowing or voluntary transfer of the item.

The PLCAA exempts negligent entrustment actions from the qualified civil liability action definition.[87] The PLCAA defines negligent entrustment as:

> the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable

---

[86] *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)).

[87] 15 U.S.C. § 7903(5)(A)(ii).

risk of physical injury to the person or others.[88]

The PLCAA definition is substantially the same as the Restatement version Alaska follows.[89] Coxe concedes the Restatement does not use the word "knowingly," but argues the Restatement commentary and illustrations show knowing transfer of an item. In contrast, the Estate relies on a dictionary definition of "supply" as "to provide for" and "to make available for use."

Negligent entrustment requires "the act of entrustment."[90] The Second Restatement of Torts § 308 provides:

> It is negligence to *permit* a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.[91]

By using the term "permit," the Restatement does not encompass thefts of a chattel, especially where the person with control over the chattel is not on notice that the chattel will be used "in a manner involving unreasonable risk of physical harm to . . . others."[92] The Virginia Supreme Court has held that negligent entrustment does not apply to unauthorized use of a firearm where "[t]here was no evidence that [the defendant] ever

---

[88]    15 U.S.C. § 7903(5)(B).

[89]    *See Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228, 1232 (Alaska 2007) ("Alaska recognizes the common law tort of negligent entrustment and follows the definition in the Restatement (Second) of Torts § 390 (1965) . . . .").

[90]    *Id.*

[91]    RESTATEMENT (SECOND) OF TORTS § 308 (1965) (emphasis added).

[92]    *Id.* § 390; *see also id.* § 390 cmt. b ("The rule stated in this Section is a special application of the rule stated in § 308 . . . .").

either permitted [the third party] to use the rifle or prohibited him from doing so."[93]

The Estate's negligent entrustment claim cannot survive under Coxe's version of the events — a firearm's theft. But if there are factual disputes whether Coday stole the rifle, or whether Coxe (1) sold or otherwise knowingly transferred the rifle to Coday and (2) knew or should have known Coday intended or was likely to use the rifle in a manner to create an unreasonable risk of harm to others, summary judgment was not appropriate on this claim.

### 3. Was summary judgment warranted?

On a motion for summary judgment, the moving party bears the initial burden of proving the absence of any dispute of material fact and "its entitlement to judgment as a matter of law."[94] Once the moving party meets its initial burden, "the burden shifts to the non-moving party to produce 'admissible evidence reasonably tending to dispute or contradict the movant's evidence.' "[95] In meeting their respective burdens, the parties may use pleadings, affidavits, and any other material that is admissible in evidence.[96] In evaluating a motion for summary judgment, the court must

---

[93] *Kingrey v. Hill*, 425 S.E.2d 798, 799 (Va. 1993); *see also* 37 AM. JUR. PROOF OF FACTS 3D 1, § 19 (1996).

[94] *Egner v. Talbot's, Inc.*, 214 P.3d 272, 278 (Alaska 2009) (quoting *Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 447-48 (Alaska 2002)).

[95] *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005) (quoting *Philbin v. Matanuska–Susitna Borough*, 991 P.2d 1263, 1265-66 (Alaska 1999)).

[96] *Okpik v. City of Barrow*, 230 P.3d 672, 677 (Alaska 2010) (citing *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1034 (Alaska 2003) and *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 59 (Alaska 2002)).

draw all reasonable inferences in favor of the non-moving party.[97]  "To create a genuine issue of material fact there must be more than a scintilla of contrary evidence."[98]

The Estate offered two expert affidavits to oppose summary judgment.  One expert concluded Coxe "elected to violate the intent, letter and spirit of the law," based on the lack of security measures at Rayco and missing firearms discovered in a 2008 audit.[99]  In his reply, Coxe failed to raise any evidentiary objections to the Estate's expert witness affidavits.  Coxe argued that the evidence the Estate relied on gave rise only to speculation and conjecture that he had some active complicity in Coday's taking possession of the rifle.

At oral argument the superior court questioned Coxe's attorney about the inferences that might be drawn from the expert witness affidavits.  Coxe for the first time suggested an evidentiary problem with the affidavits:  "I don't think you can use other bad acts to infer that somebody acted in an improper or bad fashion on the day in question.  I think that's inadmissible evidence."[100]  The Estate's attorney did not address

---

[97]     *Id.* (citing *Witt*, 75 P.3d at 1033).

[98]     *Cikan*, 125 P.3d at 339 (quoting *Martech Const. Co. v. Ogden Envtl. Servs., Inc.*, 852 P.2d 1146, 1149 n.7 (Alaska 1993)).

[99]     Coxe admitted a 2008 audit revealed approximately 200 missing firearms over a 10 to 12 year span.  Other testimony reflected most of the firearms were later located.  The majority of the "missing" firearms apparently were the result of simple clerical errors, where the firearm's disposition went unrecorded.

[100]    *See* Alaska Evidence Rule 404(b)(1):

Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith.  It is, however, admissible for other purposes, including, but not limited to, proof of motive,

(continued...)

the evidentiary issue during his argument.

The superior court's summary judgment order mentions the expert opinions only once, immediately before dividing the Estate's evidence into categories. One category was "evidence that Coxe allegedly violated federal [firearms] laws or otherwise failed to properly secure [firearms] in his business on other occasions."

The superior court expressly excluded evidence of other bad acts from its consideration on the summary judgment motion:

> Evidence of other alleged crimes, wrongs, or acts on other occasions may be offered to show negligence on the part of Coxe. But even if there was evidence that Coxe had conducted sham transactions such as the one plaintiffs claim he conducted on this occasion, such evidence cannot show that Coxe had a propensity to act in that way, in order to raise an inference that he acted in conformity with that propensity on this occasion. In other words, evidence of Coxe's conduct on other occasions could show *negligence*, but such evidence cannot show *entrustment*. (Emphasis in original.) (Citation omitted.)

In this case the determination of whether an issue of fact bars summary judgment is very close. But in response to a question from the superior court at oral argument Coxe raised a new issue — to which the Estate did not respond — and the superior court then relied on that new argument in its final decision. We are concerned the Estate may not have had an appropriate opportunity to present arguments relating to: (1) why the superior court's evidentiary ruling on the expert witness affidavits might have been erroneous; (2) whether the second part of Alaska Evidence Rule 404(b)(1)

---

[100]  (...continued)
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

might allow the evidence for some purposes;[101] or (3) whether the evidence might have been admissible under another rule.[102]

Accordingly we vacate the entry of summary judgment and remand for further consideration of this evidentiary issue so critical to the summary judgment analysis.

## V.    CONCLUSION

We AFFIRM the superior court's rulings on the PLCAA's construction and constitutionality.  We REMAND the remainder of the superior court's decision on summary judgment for further consideration.

---

[101]    *See id.*

[102]    On appeal the Estate offers an alternative basis for admission — Rule 406 (habit).  Rule 406 requires "more than mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Mueller v. Buscemi*, 230 P.3d 1153, 1157 n.11 (Alaska 2010) (quoting *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988)).  Coxe's previously missing firearms would not seem to rise to the level of habit, but we leave it to the superior court to consider first.