BOLGER, Justice,
with whom FABE, Chief Justice, joins, dissenting in part.
I agree with the portion of the court's opinion that explains the foreclosure fees and costs that may be demanded by a beneficiary as a condition of reinstatement under AS 34.20.070(b). But I respectfully disagree with the court's holding that the Unfair Trade Practices and Consumer Protection Act (UTPA) does not apply to nonjudicial foreclosures. In my opinion, the plain language of the Act covers transactions related to a debt secured by residential real estate.
This dispute is focused on the definition of "goods or services" covered by the UTPA, which was added to the statute in 2004.[1] According to this definition,
"goods or services" includes goods or services provided in connection with a consumer credit transaction or with a transaction involving an indebtedness secured by the borrower's residence. ... [2]
When we interpret a statute, we begin with the plain meaning of its languages.[3] The legislative history of a statute can sometimes alter its literal terms, but "the plainer the language of the statute, the more convincing contrary legislative history must be." [4] Even if legislative history is 'somewhat contrary' to the plain meaning of a statute, plain meaning still controls." [5] And we will not rewrite a statute to promote purposes espoused in the legislative history, even if we think the legislature made a mistake.[6] Fi *10 nally, because the UTPA is a remedial statute, its language should be liberally construed.[7]
It seems clear that a nonjudicial foreclosure is a "transaction involving an indebtedness secured by the borrower's residence." [8] Nevertheless, the court concludes that, construed in light of the legislative history and our precedents, the statutory definition of "goods or services" quoted above cannot mean what it says.
In reaching this conclusion, the court's opinion asserts that "we have consistently defined 'goods and services as excluding transactions involving real property." And, because the amendment defines "goods or services" as " 'goods or services provided in connection with ... a transaction involving an indebtedness secured by the borrower's residence," " the court assumes that the legislature's new definition incorporates the definition of "goods or services" established in our earlier UTPA decisions. The court therefore concludes that, although "[tlhe 2004 amendment elaborated what types of goods or services are covered by the act, [it] did not change the longstanding definition of goods or services itself-a definition that has never encompassed real property transactions."
But that conclusion misconstrues our prece-edents. We have never held that, as a matter of English usage, "goods or services" cannot include services provided in connection with real estate transactions. Rather, in First National Bank of Anchorage, the case in which this question was first presented, we concluded that the UTPA did not cover real estate transactions because its list of "unfair methods of competition" and "deceptive acts or practices" did not mention real property, "[nlor [did] any other provisions of the Act suggest that the legislature intended the sale of real property to come within the Act's purview." [9] And each of the other decisions the court's opinion cites merely followed First National Bank's holding.[10]
But when the legislature amended the definition of "goods or services" in 2004, it included within the seope of the UTPA one type of real property transaction not previously covered: "a transaction involving an indebtedness secured by the borrower's residence." Therefore, the reasoning behind First National Bank-that "goods or services" do not include real property transactions because the Act does not mention real property[11]-does not apply to the statute as
amended. Similarly, in Roberson v. Southwood Mamor Associates, LLC, we recognized that, through a 2007 revision to the Act, "the legislature responded to our holding in Barber and chose to include certain mortgage practices within the UTPA." [12]
The court's opinion also argues that Roberson, which was published seven years after the 2004 amendment, confirms that "the legislature has not amended [the UTPA] to include real estate transactions." But because the transaction at issue in Roberson-a lease-is clearly not "a transaction involving an indebtedness secured by the borrower's residence," the parties did not raise, and we had no occasion to consider, the effect of the 2004 amendment.[13]
*11 Nor does the legislative history support the court's construction of the amendment. Evidence of legislative intent would have to be quite convincing to overcome the unambiguous language of this statute, and the legislative history the court cites does not satisfy that significant burden.
Although the bill that added this definition of "goods or services" did, in part, target telephone solicitation,[14] there was nothing in the language of the bill that reflected an intent to limit "goods or services provided in connection with" mortgage transactions to services provided over the telephone. If the legislature had wanted to affect only telephone solicitation, it could have added a new section to AS 45.50.471(b), which defines violations, rather than modifying the definitions section. Or the legislature could have added language to the definition itself to clarify that it applies only to telephone solicitations. But the amendment contains no such limitation, and we should not assume that the legislature failed to include one by mistake.
The court also notes that the sectional analysis for the 2004 bill states that the new definition of "goods or services" "includes solicitations by credit organizations offering financing arra[ngelments." [15] Although this language recognizes that the amendment includes certain telephonic solicitations, it does not suggest that the new definition is to such solicitations.[16] If the legislature had intended the meaning suggested by the court, it could have specifically stated that the definition applies only to "services related to the solicitation of mortgage loans." In context, it seems more likely that the sectional analysis was intended to clarify that the definition was intended to cover "goods or services" that were merely solicited in addition to those that were actually provided.[17]
The draft opinion also relies on the fact that the bill's sponsor statements focused on the need to limit telephone solicitations.[18] Although "statements made by a bill's sponsor during legislative deliberations are relevant evidence when the court is trying to determine legislative intent," [19] "[the remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." [20] Therefore, we should not assume that isolated assertions by the bill sponsor accurately represent the intent of the entire legislature or the purpose of the entire bill.
It is also worth noting that, when the new definition of "goods or services" was added to the bill, its title was amended to include "fair trade practices and consumer protection." [21] This amended title confirms that the focus of the bill had expanded with the addition of the new language.
Finally, my construction of this definition is consistent with other authorities suggesting that the UTPA covers the debt collection practices at issue in this case. When we interpret the UTPA, we are required to give great weight to the cases interpreting the Federal Trade Commission Act,[22] which includes violations of the Fair Debt Collection Practices Act.[23] Other courts have recognized that nonjudicial foreclosure services are *12 among the debt collection services encompassed by these federal statutes.[24] So the case law construing these federal statutes is consistent with the legislative amendment to the definition of "goods or services" in 2004. The UTPA applies to debt collection services "involving an indebtedness secured by the borrower's residence," services that include a nonjudicial foreclosure.
In summary, there is nothing in the legislative history that discusses the meaning of "goods or services" in a manner inconsistent with the language of AS 45.50.561(a2)(9). Therefore, there is no evidence of a contrary legislative intent that should override the plain meaning of this statutory definition. I would hold that nonjudicial foreclosures are covered by the plain language of the UTPA.
BOLGER, Justice, with whom FABE, Chief Justice, joins, dissenting in part.

. Ch. 55, § 9, SLA 2004.

2. AS 45.50.561(a)(9).

. Ward v. State, Dep't of Pub. Safety, 288 P.3d 94, 98 (Alaska 2012).

. Id. (citation omitted).

. Estate of Kim ex rel. Alexander v. Coxe, 295 P.3d 380, 387 (Alaska 2013) (citation omitted).

. See State, Dep't of Commerce, Cmty. & Econ. Dev. v. Alyeska Pipeline Serv. Co., 262 P.3d 593, 598 (Alaska 2011); Alaskans for a Common Language, Inc. v. Kritz, 170 P.3d 183, 192 (Alaska 2007) ("[The extent to which the express language of the provision can be altered and departed from and the extent to which the infirmities *10 can be rectified by the use of implied terms is limited by the constitutionally decreed separation of powers which prohibits this court from enacting legislation or redrafting defective statutes." (citations omitted)).

. State v. First Nat'l Bank of Anchorage, 660 P.2d 406, 412 (Alaska 1982).

. AS 45.50.561(a)(9).

. 660 P.2d at 412-13.

. See Roberson v. Southwood Manor Assocs., LLC, 249 P.3d 1059, 1061 (Alaska 2011) (citing First Nat'l Bank of Anchorage, 660 P.2d at 412-13); W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc., 101 P.3d 1047, 1051 (Alaska 2004) (citing First Nat'l Bank of Anchorage, 660 P.2d at 412); Aloha Lumber Corp. v. Univ. of Alaska, 994 P.2d 991, 1002 (Alaska 1999) (citing First Nat'l Bank of Anchorage, 660 P.2d at 412); Barber v. Nat'l Bank of Alaska, 815 P.2d 857, 861 (Alaska 1991) (citing First Nat'l Bank of Anchorage, 660 P.2d at 413);

. First Nat'l Bank of Anchorage, 660 P.2d at 412-13.

. 249 P.3d at 1062-63.

. See id. at 1060-63.

. See Ch. 55, §§ 10-24, 28-33, SLA 2004.

. Rep. Hugh Fate, Sectional Analysis of Proposed H.B. 15, 23rd Leg., 2d Sess., at 2 (Feb. 24, 2004).

. See AS 01.10.040(b) ("When the words 'includes' or 'including' are used in a law, they shall be construed as though followed by the phrase 'but not limited to." ").

. See AS 45.50.561(a)(9) (" 'goods or services' includes goods or services provided in connection with a consumer credit transaction or with a transaction involving an indebtedness secured by the borrower's residence." (emphasis added)).

. See Rep. Hugh Fate, Sponsor Statement, H.B. 15, 23rd Leg., ist Sess. (Jan. 21, 2003); Rep. Hugh Fate, Sponsor Statement, H.B. 15, 23rd Leg., 2d Sess. (Feb. 24, 2004).

. Alaskans for a Common Language, Inc. v. Kritz, 170 P.3d 183, 193 (Alaska 2007) (citations and alterations omitted).

. Chrysler Corp. v. Brown, 441 U.S. 281, 311, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

. HB. 15, 23rd Leg., 2d Sess. (Feb. 24, 2004).

. AS 45.50.545; ASRC Energy Servs. Power and Commc'ns, LLC v. Golden Valley Electric Ass'n, Inc., 267 P.3d 1151, 1158-59 (Alaska 2011).

. State v. O'Neill Investigations, Inc., 609 P.2d 520, 529-30 (Alaska 1980).

. Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461-63 (6th Cir.2013); Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 376-77 (4th Cir. 2006); Shapiro & Meinhold v. Zartman, 823 P.2d 120, 124 (Colo.1992).