STATE of Alaska, DEPARTMENT OF COMMERCE, COMMUNITY & ECONOMIC DEVELOPMENT, DIVISION OF INSURANCE, Appellant/Cross–Appellee,

v.

ALYESKA PIPELINE SERVICE COMPANY, Appellee/Cross–Appellant.

Nos. S–13499, S–13520.

Supreme Court of Alaska.

June 10, 2011.

Signe P. Andersen, Chief Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellant/Cross–Appellee.

Kenneth P. Eggers and Sarah A. Badten, Groh Eggers, LLC, Anchorage, for Appellee/Cross–Appellant.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Alyeska Pipeline Service Company (Alyeska) contracted with the Liberty Mutual Group (Liberty Mutual) to write an owner-controlled insurance program (OCIP). The State of Alaska, Department of Commerce, Community and Economic Development, Division of Insurance (Division), issued a cease and desist order stating that Alyeska's OCIP was prohibited by statute. An administrative law judge determined that "the Liberty Mutual program does not fit within the definition of an 'owner controlled insurance program' that the statute supplies." The Division's deputy director, acting as the final agency decision-maker, reversed the administrative law judge's decision. On appeal the superior court reversed the deputy director's decision. Because the superior court correctly ascertained the statute's limits, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

### 1. Alyeska's Non–Construction OCIP

Alyeska transports crude oil through the Trans–Alaska Pipeline System. Alyeska contracted with Liberty Mutual to write an OCIP to "include[ ] workers compensation and general liability coverages" for Alyeska and several contractors,[1] effective for three years beginning January 2002. Alyeska renewed the program for another three years effective January 2005.

Six contractors enrolled in Alyeska's program. These contractors provided a variety of services for Alyeska, including warehousing, mineral mining, security, medical and emergency response, catering, oil spill prevention, and surveying. It is undisputed that the contractors' work is properly characterized as maintenance and support—not construction. For this reason, we refer to Alyeska's OCIP as a "non-construction OCIP."

### 2. Alaska Statute 21.36.065

In 2005 the legislature enacted AS 21.36.065 which, in subsection (a), states that "[a]n owner controlled insurance program or a contractor controlled insurance program . . . shall be allowed only for a major construction project."[2] The statute defines "owner controlled insurance program" in relevant part as "an insurance program where one or more insurance policies are procured on behalf of a project owner,"[3] and in turn defines "project owner" as "a person who, in the course of the person's business, engages the service of a contractor for the purpose of working on a construction project."[4] The statute became effective on June 25, 2005.[5]

The legislative history of AS 21.36.065 is undisputed. In March 2005 the House Labor and Commerce Committee met to discuss House Bill 147, a bill generally relating to insurance regulation.[6] Mike Combs, a representative of Alaska Independent Agents and Brokers, Inc., suggested that the Committee adopt his trade group's proposed amendment "to clarify its position regarding [OCIPs]."[7] According to the Committee Minutes, Combs testified that "there are several problems with using [the OCIP] insurance method for maintenance and repair programs" and that "[t]he [proposed] amendment would limit

---

**1.** Contractors typically acquire insurance to protect themselves and others who might be injured while working on a project. Jacqueline P. Sirany & James Duffy O'Connor, *Controlled Construction Insurance Programs: Putting a Ribbon on Wrap-ups*, 22 CONSTRUCTION LAW. 30, 30 (2002). An OCIP "centralizes the insurance program for all of the construction entities" and is "managed by one for the use and benefit of all." *Id.* As the administrative law judge explained, the purpose of Alyeska's OCIP "is to save contractor insurance costs that would otherwise be billed or passed through to Alyeska. By purchasing coverage collectively, Alyeska achieves cost savings."

**2.** AS 21.36.065(a); ch. 1, § 23, SLA 2005.

**3.** AS 21.36.065(c)(4).

**4.** AS 21.36.065(c)(5).

**5.** Ch. 1, SLA 2005.

**6.** Committee Minutes, House Labor & Commerce Committee hearing on House Bill (HB) 147 (Mar. 18, 2005).

**7.** *Id.* (testimony of Combs).

[OCIPs] to construction projects in excess of $50 million only and not include any repair or maintenance operations."[8]  Representative Tom Anderson, Committee Chair, stated the Committee would consult with the Division's director and consider Combs's proposal.[9]

When the House Labor and Commerce Committee met again, Chairperson Anderson introduced a committee substitute for House Bill 147 containing the amendment language Combs proposed.[10]  After explaining that the Division "is ultimately the bill's sponsor" he asked the Division's director to "give . . . a closing with this amendment, what it does and the change to the bill . . . ."[11] The Division's director testified with respect to OCIPs:

> There have been times when that ability [to have an OCIP] has been attempted to expand into other than construction projects, for example, maintenance projects, ongoing things that in our mind OCIPs were never intended to do, and our concern with the ability to do that for things other than large, one-time construction projects is that it takes one premium out of an already fragile marketplace.[12]

The Committee approved the committee substitute.[13]

The Division's director also testified before the House Finance Committee.[14]  The director stated that OCIPs "are designed for major construction projects" and that the proposed amendment "is a prohibition against expanding them into other types of things than large construction projects."[15] The amendment was adopted and the bill was moved out of committee.[16]

The Division's director made additional statements about OCIPs before two Senate committees.  The director expressed concern to the Senate Labor and Commerce Committee about OCIPs expanding into non-construction projects.[17]  Similarly at the Senate Finance Committee meeting the director testified that OCIPs were appropriate only for large construction projects and not for non-construction projects.[18]  Senator Lyda Green, the Committee co-chairperson, understood the director's testimony to mean that an OCIP " 'should not morph' into an ongoing insurance program."[19]

The legislative history includes neither committee reports nor statements by non-committee-member legislators indicating the full legislature's intent in passing the final bill.

## B.  Proceedings

In November 2006 the Division issued Liberty Mutual a cease and desist order listing seven compliance issues.  Count One stated that Alyeska's OCIP was prohibited under Alaska law because "[i]n its present form, the OCIP is designed to cover on-going maintenance and is not restricted to a large construction project in violation of AS 21.36.065."  Liberty Mutual requested an administrative hearing.  The administrative law judge granted Alyeska's request to intervene.[20]

---

**8.**  *Id.*

**9.**  *Id.* (statement of Chairperson Anderson).

**10.**  *See* Transcript of House Labor & Commerce Committee Meeting, at 1–2, (Mar. 30, 2005) (statement of Chairperson Anderson).

**11.**  *Id.* at 4.

**12.**  *Id.* at 7–8 (testimony of Division Director Linda Hall).

**13.**  Committee Minutes, House Labor & Commerce Committee hearing on HB 147 (Mar. 30, 2005).

**14.**  Transcript of House Finance Committee Meeting, at 1, 10 (Apr. 15, 2005).

**15.**  *Id.* at 11–12 (testimony of Division Director Hall).

**16.**  *Id.* at 12.

**17.**  Committee Minutes, Senate Labor & Commerce Committee, at 7 (Apr. 12, 2005) (testimony of Division Director Hall).

**18.**  Committee Minutes, Senate Finance Committee, at 26–27, (May 1, 2005) (testimony of Division Director Hall).

**19.**  *Id.* at 27 (statement of Co–Chairperson Green).

**20.**  The Division and Liberty Mutual subsequently entered into a stipulation settling all compliance issues except those relating to Count One.

Alyeska filed a motion for partial summary adjudication arguing that (1) by its express language AS 21.36.065 applies only to construction OCIPs and therefore does not apply to its non-construction OCIP, and (2) even if AS 21.36.065 did govern non-construction OCIPs, Alyeska's OCIP falls within a statutory exception.[21]

The administrative law judge granted Alyeska's motion, determining "the Liberty Mutual program does not fit within the definition of an 'owner controlled insurance program' that the statute supplies." Based on the statute's plain language, the administrative law judge concluded AS 21.36.065 "addresses only construction OCIPs," and therefore does not govern Alyeska's non-construction OCIP. The administrative law judge was not persuaded that the statute's legislative history compelled a different conclusion. According to the administrative law judge, the legislation proposed by the trade group "was misdrafted. While the surrounding documentation makes perfectly clear the group's intent to 'prohibit[ ] the use of OCIP[s] ... outside the construction industry,' the group's private attorney wrote language that instead defined non-construction OCIPs out of the scope of the legislation, leaving them unregulated."

After the Division and Alyeska filed proposals for agency action,[22] the Division's deputy director, acting as the final agency decision-maker, issued a decision and final order in October 2007. Determining that the statute is ambiguous and that the legislative history supported the Division's position, the deputy director found that Alyeska's OCIP is governed by and in violation of AS 21.36.065. The deputy director reversed the administrative law judge's decision with respect to AS 21.36.065 and affirmed Count One of the cease and desist order.

Alyeska then appealed to the superior court, which determined the deputy director's decision was "contrary to the plain language of the statute." The superior court reasoned that notwithstanding the legislative history, AS 21.36.065 restricts only construction OCIPs. It stated that:

It [is] one thing to use legislative history to correct a drafting error when that error is obvious or the error imposes a restriction on the persons subject to the legislation that was never intended by the legislature. It is another to expand a restriction to persons plainly excluded by language of the statute. In these instances, the remedy must lie with the legislature, not the court.

The superior court also rejected Alyeska's argument that its OCIP falls within two exceptions under AS 21.36.065(b).

The Division appeals regarding the application of AS 21.36.065(a). Alyeska cross-appeals regarding the application of an exception under AS 21.36.065(b).

### III. STANDARD OF REVIEW

■■■ When a superior court acts as an intermediate appellate court in an administrative matter, we review the merits of the agency's decision.[23] The proper interpretation of a statute presents a question of law that we review de novo, "adopting the rule of law most persuasive in light of precedent, reason, and policy."[24]

### IV. DISCUSSION

■■■ The Division claims the superior court erred because AS 21.36.065 applies to non-construction OCIPs. The Division makes three arguments in support of its position. First, the Division contends the court failed to interpret AS 21.36.065 in conjunction with AS 21.36.190(f).[25] Second, the

---

**21.** *See* AS 21.36.065(b)(2).

**22.** *See* AS 44.64.060(e) (outlining procedure for filing proposal for action with agency after administrative law judge issues decision).

**23.** *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007) (citing *Alaska Trademark Shellfish, LLC v. State*, 91 P.3d 953, 956 (Alaska 2004)).

**24.** *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009) (citing *Alaskans for Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

**25.** AS 21.36.190(f) states: "Except as provided in AS 21.36.065, an insurer, whether authorized or unauthorized, may not underwrite an owner controlled insurance program or contractor controlled insurance program. In this subsection, 'owner controlled insurance program' and 'con-

Division claims the court failed to interpret AS 21.36.065 in a manner consistent with the legislature's intent, as evidenced by the statute's legislative history. Third, the Division argues the court's interpretation does not comply with the maxim *expressio unius est exclusio alterius.*[26]

▪ In interpreting a statute we "look to the plain meaning of the statute, the legislative purpose, and the intent of the statute."[27] We have declined to mechanically apply the plain meaning rule when interpreting statutes, adopting instead a sliding scale approach: "The plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[28] We apply this sliding scale approach even if a statute is facially unambiguous.[29] Canons of interpretation can also provide useful aids in our efforts to interpret a statute.[30]

Based on its plain language, AS 21.36.065 does not govern non-construction OCIPs such as Alyeska's. When the statutory definitions provided in AS 21.36.065(c) are substituted for the relevant terms in AS 21.36.065(a), the statute provides:

> An insurance program [where one or more insurance policies are procured on behalf of a person who, in the course of the person's business, engages the service of a contractor for the purpose of working on a construction project ... for the purpose of insuring that person] ... shall be allowed only for a major construction project.

Through its incorporation of specifically defined terms, the statute simply was not drafted to govern non-construction OCIPs.[31] The Division argues that extratextual sources or canons of interpretation reveal a legislative intent requiring us to disregard the statute's plain language. Alyeska argues that the Division seeks to reform the statute, not interpret it. We agree with Alyeska. Taking into account AS 21.36.190(f) and *expressio unius,* AS 21.36.065 remains unsusceptible to the Division's interpretation.[32] On the record before us, including the limited legislative committee history, we must conclude that the statute was either (1) intended by the full legislature to govern only construction OCIPs,[33] or (2) misdrafted through reli-

---

tractor controlled insurance program' have the meanings given in AS 21.36.065."

26. *Expressio unius* is a doctrine of statutory construction, instructing "that when the legislature expressly enumerates included terms, all others are impliedly excluded." *Vanvelzor v. Vanvelzor,* 219 P.3d 184, 188 (Alaska 2009) (citing *Ranney v. Whitewater Eng'g,* 122 P.3d 214, 218–19 (Alaska 2005)).

27. *Premera Blue Cross,* 171 P.3d at 1115 (citing *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.,* 101 P.3d 1047, 1050 (Alaska 2004)).

28. *Gov't Emp. Ins. Co. v. Graham–Gonzalez,* 107 P.3d 279, 284 (Alaska 2005) (quoting *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787–88 (Alaska 1996)).

29. *See Curran v. Progressive Nw. Ins. Co.,* 29 P.3d 829, 831–32 (Alaska 2001) (citing *Progressive Ins. Co. v. Simmons,* 953 P.2d 510, 516 (Alaska 1998)). *But see Benavides v. State,* 151 P.3d 332, 335 (Alaska 2006) (quoting *Tesoro Petroleum Corp. v. State,* 42 P.3d 531, 537 (Alaska 2002)) ("*If a statute is ambiguous* 'we apply a sliding scale of interpretation ....' ") (emphasis added).

30. *See McKee v. Evans,* 490 P.2d 1226, 1230 n. 18 (Alaska 1971).

31. *Cf. Anderson v. Alyeska Pipeline Serv. Co.,* 234 P.3d 1282, 1287–88 (Alaska 2010) (interpreting "project owner" under AS 23.30.045 and emphasizing we "look first to see if the word or phrase to be construed has a specific definition") (citing *Ranney,* 122 P.3d at 218).

32. We note that AS 21.36.190(f) states " 'owner controlled insurance program' ... ha[s] the meaning[] given in AS 21.36.065." Because AS 21.36.190(f) incorporates the meaning given in AS 21.36.065 generally, and therefore incorporates all of the definitions in subsections .065(c)(1)–(6) and not merely subsections .065(c)(2) and (4), we reject the Division's argument that "[t]he definition of OCIP ... do[es] not include any reference to 'construction.' " Nor does *expressio unius* support the Division's position; that maxim "expresses the concept that when people say one thing they do not mean something else." 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:25 (7th ed. 2007). For the reasons stated, the language expressly adopted by the legislature does not support the Division's interpretation.

33. *See State v. Campbell,* 536 P.2d 105, 111 (Alaska 1975), *overruled on other grounds by Kimoktoak v. State,* 584 P.2d 25, 31 (Alaska 1978) ("At some point, it must be assumed that the legislature means what it says.").

ance on the industry trade group's proposal. Even if the latter, we will not invade the legislature's province by extending the plain language of AS 21.36.065 to govern non-construction OCIPs.[34] The Division's remedy lies with the legislature, not this court.[35]

## V. CONCLUSION

We AFFIRM the superior court's decision.[36]

---

**34.** *See Alaskans for a Common Language, Inc. v. Kritz,* 170 P.3d 183, 192 (Alaska 2007) (quoting *Campbell,* 536 P.2d at 111) (noting that separation of powers " 'prohibits this court from enacting legislation or redrafting defective statutes' "); *Gottschalk v. State,* 575 P.2d 289, 296 (Alaska 1978) (declining to save overbroad statute "because in doing so we would be stepping over the line of interpretation and engaging in legislation"); *see also* 73 AM.JUR.2D *Statutes* § 121 (2010) ("Generally, courts will not undertake correction of legislative mistakes in statutes notwithstanding the fact that the court may be convinced by extraneous circumstances that the

legislature intended to enact something very different from that which it did enact.") (citations omitted).

**35.** *See Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough,* 135 P.3d 1000, 1006 (Alaska 2006) (observing legislature mistakenly deleted statutory language, realized error, and enacted new language to correct it).

**36.** In light of our decision we decline to address Alyeska's cross-appeal.