*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| M.M., through his next friend ERIN KIRKLAND, | ) ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF ALASKA, DEPARTMENT OF ADMINISTRATION, OFFICE OF PUBLIC ADVOCACY; LESLIE RIDLE, in her official capacity as Commissioner of the Department of Administration; and CHAD HOLT, in his official capacity as Director of the Office of Public Advocacy, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Appellees. | ) |
| | ) |

Supreme Court No. S-16970

Superior Court No. 3AN-15-10448 CI

O P I N I O N

No. 7445 - April 24, 2020

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, and Jennifer Henderson, Judges.

Appearances: Goriune Dudukgian and James J. Davis, Jr., Northern Justice Project, LLC, Anchorage, for Appellant. Kathryn Vogel, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellees.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

STOWERS, Justice.
BOLGER, Chief Justice, dissenting in part.

## I.    INTRODUCTION

This case involves a dispute between an incapacitated plaintiff and the Office of Public Advocacy (OPA), his court-appointed public guardian. The plaintiff raised several issues in a complaint filed on his behalf by a next friend in superior court — issues regarding the caseloads of OPA workers, the lack of standards of practice for OPA workers, and OPA not visiting its wards quarterly as required by statute. The plaintiff requested class certification, a declaratory judgment, and injunctive relief. The superior court granted summary judgment against the plaintiff on all issues except one, and the parties proceeded with discovery and briefing on the issue whether OPA had met its statutory requirement to visit the plaintiff on a quarterly basis. After the parties stipulated to a set of facts, the superior court granted OPA's motion for summary judgment on the remaining issue. OPA moved for attorney's fees, which the court granted but reduced, and the court entered final judgment in favor of OPA.

The plaintiff appeals, arguing that the superior court improperly interpreted the statutes addressing to whom OPA may delegate duties, erred by awarding attorney's fees, and erred by holding the plaintiff's next friend personally liable for fees. Because the superior court properly interpreted the statutes at issue, we affirm its ruling that OPA may contract with service providers to help satisfy its statutory visitation duty. As to the attorney's fees award, we conclude it was error to hold the plaintiff's next friend personally liable for fees. We remand for the superior court to reconsider whether to impose fees on the plaintiff, given that the next friend is no longer personally liable.

## II.    FACTS AND PROCEEDINGS

OPA is the guardian of last resort for incapacitated persons in Alaska.[1] The

---

[1]    *See* AS 13.26.311(d)(7); AS 13.26.710(a); *In re. M.K.*, 278 P.3d 876, 882 (Alaska 2012).

plaintiff in this case, M.M,[2] is incapacitated, and in July 2014 the superior court appointed OPA as his guardian. The court also issued a guardianship plan detailing OPA's authority over M.M. M.M.'s OPA guardian contracted with Assets, Inc. (Assets)[3] and an assisted living representative[4] to provide M.M. with housing and care at an assisted living home. The agreement between the three parties memorialized the care M.M. would receive and specified that Assets was required to conduct quarterly home visits, including two unannounced visits to the assisted living home per year.

In October 2015 M.M., through his mother, Erin Kirkland, as next friend,[5] filed a class action complaint for declaratory and injunctive relief on behalf of himself and all others similarly situated. M.M. named as defendants the Department of Administration, the Commissioner of the Department, OPA, and the Director of OPA (collectively "the State"). M.M. alleged that OPA had too many wards per individual guardian and that the guardians were not fulfilling their statutory duties to wards. Specifically, M.M. alleged that he "does not receive in-person visits from his public guardian at least every quarter, as required under Alaska law." The complaint also contained facts supporting class certification. Finally, M.M. claimed that relief was

---

[2]     The plaintiff's initials are used to protect his privacy.

[3]     Assets is an Alaska nonprofit corporation that "arranges community-based living for Alaskan residents who experience developmental disabilities and/or mental illness."

[4]     The assisted living representative is "an independent contractor providing assisted living services" through "an assisted living home" in Anchorage that is licensed to "provide homelike environment for persons with developmental disability and/or mental illness who need assistance with activities of daily living."

[5]     *See Next Friend*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Someone who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian.").

required because OPA had not adopted standards of practice to regulate its workers' caseloads or to specify how they should interact with their wards.

The State answered M.M.'s complaint, admitting that "caseloads of public guardians have increased over the last five years to an average of more than 80 wards per public guardian," and that, "assuming a 37.5-hour work-week, each public guardian has on average less than two hours to spend on each ward per month." The State also raised several affirmative defenses, including failure to state a claim for which relief may be granted, immunity, and non-justiciability. The State requested that M.M.'s complaint be dismissed and that it be awarded costs and fees. The State also filed a motion to dismiss, again asserting non-justiciability and failure to state a claim for which relief may be granted.

M.M. moved for partial summary judgment. He argued that the issues he raised were justiciable, that the court should not dismiss his claims on prudential grounds, that OPA was in violation of Alaska law mandating written standards for guardians and quarterly visits of wards, and that a private right of action existed for him to enforce OPA's statutory duties. The superior court granted partial summary judgment for the State[6] on the issues whether OPA was required to issue written standards or decrease the caseloads of its guardians to fewer wards per guardian.[7] As to whether OPA guardians must visit their wards quarterly, the court concluded that the political question doctrine did not apply and that the claim should not be dismissed on prudential grounds;

---

[6] The court converted the State's request to dismiss into a motion for summary judgment. *See* Alaska R. Civ. P. 12(b) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.").

[7] M.M. does not appeal either ruling.

further, the court determined that AS 13.26.720(c)(2)[8] — the law requiring quarterly visits — was not ambiguous, and that there were issues of material fact regarding "whether the substantial compliance doctrine applies in this case and if so whether Plaintiff's public guardian has substantial[ly] complied with applicable statutes as to M.M."

The superior court subsequently clarified its ruling regarding substantial compliance. The court encouraged the parties to stipulate to facts establishing "who conducted the in-person visits with the wards for and on behalf of the guardians, and when" so the court could "determine whether the defendants' use of these alternative individuals substantially complies with the defendants' statutory requirement to visit M.M." The parties filed stipulated facts and supplemental briefing. The superior court concluded that the parties' stipulations were insufficient to determine whether the State had substantially complied with its visitation requirement. M.M. filed a motion for clarification, the State replied, and oral argument was held. Following oral argument, the court determined it had sufficient facts to rule on the remaining issue, and it issued a final order granting the State's motion for summary judgment and denying M.M.'s cross-motion.

The superior court concluded that OPA had not complied with its visitation requirement on its own but that the "undisputed facts . . . show several 'in-person' visits with the ward by contracted service providers on a regular basis — certainly weekly, monthly, and several times each quarter." Further, "these providers regularly report to the assigned public guardian, at least several times each quarter." The court concluded that "the contracted service provider for M.M. provides far more protection for M.M.

---

[8] The public guardian shall "visit each of the public guardian's wards and protected persons at least once every quarter to monitor their welfare." AS 13.26.720(c)(2).

than a simple quarterly 'in-person' visit would provide." The court disagreed that OPA was delegating its duty by contracting for services, instead determining that OPA was "merely contracting for services that assist in the public guardian carrying out the duties required by statute." In conclusion the court stated that the "buck still stops with the public guardian who is required to monitor their ward's welfare. But in this case, the court finds the public guardian has done so through permissible contracted services."

Following the superior court's order, the State moved for $25,000 in attorney's fees, 20% of its total fees pursuant to Alaska Civil Rule 82(b)(2).[9] M.M. opposed, arguing that the State's request was manifestly unreasonable, that an award of $25,000 would chill access to the court system, that the State was not entitled to fees for the time spent litigating the class certification issue, that Kirkland as next friend was not personally liable for any fees, and that the court should either deny the State's motion in its entirety or award the State a lesser amount. The court issued an order awarding the State $12,500 and holding M.M.'s next friend personally liable for payment. The court issued final judgment for the State. M.M. appeals.

## III.  STANDARDS OF REVIEW

"A superior court's order granting a motion for summary judgment is reviewed de novo. We will affirm a grant of summary judgment if there are no genuine issues of material fact and if the moving party is entitled to summary judgment as a matter of law."[10]

---

[9]     The State calculated nearly $170,000 in legal fees incurred for defending claims brought by M.M., but it reduced its fees to $125,000 and requested 20% of its reduced fees to "address duplication of effort and to ensure the reasonableness of the fees."

[10]     *Fenner v. Municipality of Anchorage*, 53 P.3d 573, 575 (Alaska 2002) (footnote omitted).

We interpret statutes de novo, "adopting the rule of law most persuasive in light of precedent, reason, and policy."[11]

We review an award of attorney's fees for abuse of discretion, reversing only "if the award is 'arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.' "[12] But "[w]e review de novo whether the superior court correctly applied the law in awarding attorney's fees."[13]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Ruling That OPA Can Contract With Service Providers To Fulfill Its Duty To Visit Its Wards Quarterly.

In its order granting the State's motion for summary judgment, the superior court explained that the "meat of the issue involves the interpretation of primarily three statutes": AS 13.26.720(c)(2), AS 13.26.720(d)(1), and AS 13.26.740. "When 'interpreting a statute, we consider its language, its purpose, and its legislative history . . . .' "[14]

Alaska Statute 13.26.720 enumerates the powers and duties of the public guardian. It provides in subsection (c)(2) that "[t]he public guardian shall . . . visit each of the public guardian's wards and protected persons at least once every quarter to

---

[11] *Bibi v. Elfrink*, 408 P.3d 809, 815 (Alaska 2017) (quoting *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009)).

[12] *Collier v. Harris*, 261 P.3d 397, 410 (Alaska 2011) (quoting *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992) (citations omitted)).

[13] *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015) (alteration in original) (quoting *Dearlove v. Campbell*, 301 P.3d 1230, 1233 (Alaska 2013)).

[14] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (quoting *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003)).

monitor their welfare." This subsection is one of eight describing the public guardian's duties to its wards.[15]

Before the superior court, and on appeal, the State conceded that M.M. was not visited at least once quarterly by OPA. But the superior court held that although OPA did not comply with in-person visits "[it]self" by visiting in only 5 out of 10 quarters, AS 13.26.720(d)(1), providing that "[t]he public guardian may . . . contract for services necessary to carry out the duties of the public guardian's office," allowed OPA to meet the requirement for quarterly in-person visits by contracting with Assets to perform some of these visits. M.M. responds that this conclusion is erroneous because of the strict qualification requirements AS 13.26.740 imposes on those to whom the public guardian delegates its duties, requirements the parties agree Assets does not meet.

Alaska Statute 13.26.740, titled "Staff; delegation of powers and duties," provides:

> The public guardian may employ staff and delegate to members of the staff or to volunteers the powers and duties as guardian or conservator and other powers and duties under this chapter. However, the public guardian retains responsibility for the proper performance of the delegated powers and duties. The public guardian may only delegate powers and duties under this chapter to an individual who meets the eligibility requirements of AS 13.26.311 and has passed the criminal history record information check under AS 08.26.070. In addition, the individual must either hold a current certification as a guardian from a nationally recognized organization at the time of the delegation or apply for and receive that certification within one year of the delegation.

---

[15]     *See, e.g.*, AS 13.26.720(c)(3) ("The public guardian shall . . . keep and maintain financial and statistical records of all cases in which the public guardian provides guardianship or conservatorship services.").

M.M. asserts that allowing the public guardian to count visits by Assets — which the parties do not dispute occurred more than once per quarter — allows impermissible delegation of duties to an unqualified entity. The State argues that the superior court correctly ruled that in contracting with Assets to visit OPA's wards, OPA is not delegating its duties but is instead contracting for "services necessary to carry out" its duties.[16]

The question of law is thus whether OPA can fulfill its duty to visit its wards quarterly by contracting with service providers like Assets to visit/monitor its wards and report back to OPA.

### 1. The plain language

"Statutory interpretation in Alaska begins with the plain meaning of the statute's text."[17] M.M. argues that the court, in construing the statute, must presume "the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[18] M.M. argues that "the trial court's distinction between the 'delegation' of the public guardian's duties and 'contracting for services' finds no support in the plain language of the applicable statutes." He explains that contracting for services under AS 13.26.720(d)(1) is "*one way* by which OPA can 'delegate' the duties of the public guardian," (emphasis in original) along with employing staff or accepting volunteer services, but that all third parties to whom OPA's duties are delegated must be properly qualified — that is, they

---

[16] *See* AS 13.26.720(d)(1). The State also argues that prudential concerns and non-justiciability make this case inappropriate for us to decide. Because we choose to reach the merits of this appeal, we do not discuss these arguments further.

[17] *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012).

[18] *Nelson v. Municipality of Anchorage*, 267 P.3d 636, 642 (Alaska 2011).

must meet the qualifications of AS 13.26.740. The State asserts that this cannot be correct because M.M.'s reading of the statute renders AS 13.26.720(d)(1) superfluous. The State's reading is correct.

Alaska Statute 13.26.720(c)(2) requires the public guardian to visit each of its wards at least once per quarter. The plain meaning of this subsection clearly establishes a minimum requirement for OPA to make quarterly visits to its wards. It also establishes the purpose of these visits: to monitor the wards' welfare.[19]

Alaska Statute 13.26.720(d)(1) allows OPA to "contract for services necessary to carry out" its duties as the public guardian. The statute contains no requirements contractors must meet before contracting to assist OPA. The statute does not reference AS 13.26.740 or the requirements that section lists for hiring and delegating duties to staff and volunteers. Further, AS 13.26.720(d)(1) does not mention delegation at all; it deals only with "contract[ing] for services necessary to carry out" OPA's duties as the public guardian. Contracting to assist in carrying out a duty is different from delegating a duty to staff or volunteers. And as the State correctly points out, requiring all contractors to meet the qualifications OPA's staff or volunteers must meet under AS 13.26.740 would render superfluous the provision allowing OPA to contract for services to assist in completing its duties. M.M.'s reading of the statutes militates that contracting for services necessary to carry out duties[20] and delegating duties[21] are equivalent. But nowhere in AS 13.26.720 is the word "delegate" used, and to presume the legislature meant "delegate" when it said "contract for services"

---

[19]     AS 13.26.720(c)(2).

[20]     AS 13.26.720(d)(1).

[21]     AS 13.26.740.

disregards our canons of statutory interpretation.[22]

Accordingly, the plain meaning of the statutes read together supports the superior court's determination that OPA may contract with service providers to help meet its quarterly visitation requirement.

### 2. The legislative history

M.M. points to a 2007 legislative committee meeting in which amendments to AS 13.26.740 were discussed. Josh Fink, OPA's then-director, explained a 2004 House bill enacting licensing requirements for private guardians.[23] With the clean-up bill, the legislature eliminated duplicate licenses for private guardians,[24] clarified which crimes precluded one from obtaining a license as a guardian,[25] and imposed the same requirements on public guardians as were already in place for private guardians — passing a criminal background check and obtaining a certification from a

---

[22] *See State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 n.33 (Alaska 2011) ("At some point, it must be assumed that the legislature means what it says." (quoting *State v. Campbell*, 536 P.2d 105, 111 (Alaska 1975), *overruled on other grounds by Kimoktoak v. State*, 584 P.2d 25, 31 (Alaska 1978))); *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999) ("When we engage in statutory construction, we must . . . presume 'that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous.' " (quoting *Rydwell v. Anchorage Sch. Dist.*, 864 P.2d 526, 528, 530-31 (Alaska 1993))).

[23] Testimony of Josh Fink, Director, Office of Pub. Advocacy at 10:11:18-34, Hearing on S.B. 101, before the Sen. State Affairs Standing Comm., 25th Leg., 1st Sess. (Mar. 27, 2007).

[24] *Id.* at 10:11:40-12:26.

[25] *Id.* at 10:12:28-13:16.

national organization before being allowed to act as a guardian.[26]

M.M. notes that, in response to a question by Senator Hollis French, Director Fink explained that "someone would be in violation of their license if they delegated a guardianship responsibility to a non-licensed individual."[27] M.M. claims this testimony supports his contention that "the legislature, based on OPA's assurances, did not intend to condone the delegation of core guardianship duties, including the duty to visit wards, to unlicensed and un-vetted individuals." The State responds to M.M.'s argument as follows:

> The concern expressed in the words of Senator Hollis French and Josh Fink was not that the ward would *receive services* from someone without a license but that individuals could be taken advantage of by delegation of guardianship *powers* by a *private* guardian — such as the power to make legal "decisions that require a guardian license" for the individual. (Emphasis in original.)

At no time during the committee meeting was the ability of the public guardian to "contract for services necessary to carry out the duties of the public guardian's office" mentioned.[28] And the State is correct that the discussion between Director Fink and Senator French concerned the ability of a private guardian — rather than the public guardian — to delegate duties to employees who did not possess licenses.[29]

M.M. is correct that the legislature also was concerned with the entities to whom the public guardian could delegate duties, and this is specifically evidenced by the requirements listed in AS 13.26.740 for the public guardian to "employ staff and delegate

---

[26]   *Id.* at 10:13:25-52.

[27]   *Id.* at 10:19:22-29.

[28]   *See id.*; AS 13.26.720(d)(1).

[29]   Testimony of Director Fink, *supra* note 23 at 10:17:35-20:12.

to members of the staff or to volunteers the powers and duties as guardian." But by including AS 13.26.720(d)(1) in the statutory scheme — allowing the public guardian to contract for services without its contractors meeting the same qualifications as the staff or volunteers to whom it delegates its duties as public guardian — the legislature evidenced its intent for the public guardian to permissibly contract for services to help with completing its duties.

The superior court correctly explained this in its order granting the State's motion for summary judgment:

> The court does not find that the public guardian is "delegating" its duty by using contracted services, but merely contracting for services that assist in the public guardian carrying out the duties required by statute. This is not to say a public guardian could chat on the phone once a year with a [personal care assistant] at an assisted living home who has had quarterly (or even daily) contact with the ward and meet their statutorily required duty to visit, but the contract calls for far more minimal contact than is required by the statute. The buck still stops with the public guardian who is required to monitor their ward's welfare.

Nothing in the legislative committee meeting M.M. references or in the legislative history more generally casts doubt on the superior court's interpretation of the statutes.

### 3. The public policy

M.M. argues that "the trial court's holding makes no sense from a policy perspective." He explains that the public guardian must "regularly visit [its] wards . . . so that the guardian can police the ward's day-to-day caregivers and ensure that they are properly following the ward's care plan." He contends that in-person visits are particularly important because they allow the public guardian to assess the situation firsthand rather than from afar. He argues that "OPA's reliance on M.M.'s paid caregivers to police themselves contravenes these fundamental rationales for requiring

public guardians to visit their wards in the first place." The State counters that its public guardians have "on average less than two hours to spend on each ward per month" and that prioritizing in-person visitation above all other ways the public guardian serves the wards would have "absurd results." The State details the extensive services provided to M.M. despite his guardian not having visited him personally every quarter.

The legislature explained that it "intends through AS 13.26.700 - 13.26.750 to establish the function of public guardian for the purpose of furnishing guardianship and conservatorship services."[30] "It further intends by establishing this function to provide assistance to guardians throughout the state in securing necessary services for their wards and to assist . . . in the orderly and expeditious handling of guardianship proceedings."[31] The legislature expressly allowed OPA to "contract for services necessary to carry out" its duties.[32] Its stated purpose of "furnishing guardianship . . . services" and providing "assistance to guardians throughout the state in securing necessary services for their wards," coupled with its allowing OPA to contract for help to carry out its duties, supports the conclusion that requiring OPA to make its contractors obtain the same qualifications as its staff would greatly hinder its ability to provide services.

The public policy behind OPA's wards receiving the best care possible and having their conditions monitored as frequently as possible supports allowing OPA to contract with service providers to help fulfill its duty to perform quarterly visits.

### 4. Conclusion

Because the plain language, legislative history, public policy, and purpose

---

[30] AS 13.26.700.

[31] *Id.*

[32] AS 13.26.720(d)(1).

of the statutes discussed above all support the superior court's interpretation, we affirm the court on the issue whether OPA can contract with service providers to help fulfill its visitation duty.

**B.    It Was Error To Hold M.M.'s Next Friend Personally Liable For Attorney's Fees.**

M.M. argues that the superior court erred by holding his next friend personally liable for attorney's fees.  In support of his argument, M.M. cites AS 09.60.030, providing:  "When costs or disbursements are adjudged against an infant plaintiff or incompetent, the guardian by whom the plaintiff appeared in the action is responsible for the payment, and payment may be enforced against the guardian as if the guardian were the actual plaintiff."  M.M. asserts that it is improper to hold his next friend liable for fees because the statute requires "guardians" to pay, not next friends.

The State responds that the superior court correctly held M.M's next friend personally liable for fees because a next friend qualifies as "the guardian by whom the plaintiff appeared" in accordance with the language of AS 09.60.030.  The State argues, and the superior court held, that "next friend" and "guardian ad litem" are interchangeable terms both referring to "the guardian by whom" an incompetent person appears in litigation.  The State argues and the superior court concluded that "next friend" is used when the case involves an incompetent plaintiff and "guardian ad litem" when the case involves an incompetent defendant.

Alaska Statute 09.60.020 addresses the fee liability of an incompetent defendant's guardian ad litem:  "A person appointed guardian ad litem by a court for an infant or incompetent defendant is not liable for the costs of the action."  In a situation involving an incompetent *plaintiff*, however, AS 09.60.030 applies.[33]  And AS 09.60.030

---

[33]    *See Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 811 (Alaska 2011).

directs the court to hold "the guardian by whom the plaintiff appeared in the action . . . responsible for the payment . . . as if the guardian were the actual plaintiff."[34] Notably, AS 09.60.030 does not mention a plaintiff's next friend.

"At some point, it must be assumed that the legislature means what it says."[35] We agree with the State's assertion that the terms "guardian ad litem" and "next friend" are often used interchangeably.[36] But the legislature used neither term in AS 09.60.030, and we will not add language to the statute.[37] The legislature easily could have included next friend in the statute had it wished to do so; other state legislatures have done so.[38] In the absence of clear statutory direction, we cannot conclude that

---

[34] We note that AS 09.60.040, which provides that "[i]n actions in which . . . a person authorized to represent a party is a party, costs may be allowed as in other cases," does not apply in this case because Kirkland is not a party, but is representing M.M. as next friend.

[35] *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 n.33 (Alaska 2011) (quoting *State v. Campbell*, 536 P.2d 105, 111 (Alaska 1975), *overruled on other grounds by Kimoktoak v. State*, 584 P.2d 25, 31 (Alaska 1978)).

[36] *See, e.g.*, *von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1293 (S.D.N.Y. 1986) ("[T]here is no substantial difference between a 'guardian ad litem' and a 'next friend.' ").

[37] "We are not vested with the authority to add missing terms [to a statute] or hypothesize differently worded provisions in order to reach a particular result." *Municipality of Anchorage v. Suzuki*, 41 P.3d 147, 151 n.12 (Alaska 2002) (quoting *Hickel v. Cowper*, 874 P.2d 922, 927-28 (Alaska 1994)).

[38] *Cf.* Ky. Rev. Stat. Ann. § 453.150 (West 2019) ("A next friend . . . shall, upon failure in the action, be adjudged to pay the defendant his costs."); Mich. Comp. Laws § 600.2415 (2019) ("Any person who brings an action as next of friend . . . shall be responsible for the costs of the suit."); Miss. Code Ann. § 11-53-45 (2019) ("If in any case the plaintiff or complainant be an infant suing by next friend, such next friend shall
(continued...)

AS 09.60.030 directs courts to hold a next friend personally liable for attorney's fees. Accordingly, we reverse the superior court's decision that Kirkland is personally liable for attorney's fees adjudged against M.M.

   C.   **Remand Is Necessary To Allow The Superior Court To Reconsider The Attorney's Fees Award In Light Of Our Decision.**

         M.M. also argues that the superior court erred by awarding the State $12,500 in attorney's fees because imposing fees in this case chills access to the court system. Civil Rule 82(b)(2) provides that in "cases in which the prevailing party recovers no money judgment[,] the court shall award . . . the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." The State moved for attorney's fees pursuant to Rule 82(b)(2), and the court reduced by half the State's claim for 20% in fees and awarded $12,500. M.M. does not appeal the court's fee calculation. He instead argues that he is incapacitated and indigent, and that he brought this case irrespective of monetary gain to ensure the State's compliance with statutory duties. He argues that an attorney's fees award equivalent to nearly one year of his income chills access to the courts.

         The superior court recognized its discretion to vary fees to avoid chilling access to the courts for M.M. and similarly situated litigants. It noted that M.M. diligently pursued the case and that the resolution of the issues in this case was important to both parties. The court was sympathetic to M.M.'s indigent status and accordingly reduced the State's requested fee award by half. Typically, we would uphold a fee award like the one in this case, given that the superior court was well within its discretion to

---

**38**      (...continued)
be liable for costs."); Neb. Rev. Stat. § 25-308 (2019) ("The guardian, conservator, or next friend is liable for the costs of the action brought by the guardian, conservator, or next friend."); Ohio Rev. Code Ann. § 2307.12 (West 2019) ("The next friend shall be liable for the costs of the action brought by him.").

award half of the fees permitted by Civil Rule 82(b)(2).**[39]** But in light of our decision that a next friend may not be held personally liable for an incapacitated person's attorney's fees, we remand for the superior court to reconsider whether the fee amount awarded in this case remains appropriate given that M.M. will be left personally liable for the fees.

## V. CONCLUSION

We AFFIRM the superior court's decision that OPA can contract with service providers to help fulfill its duty to visit wards quarterly. We REVERSE the superior court's decision that M.M.'s next friend, Kirkland, is personally liable for his attorney's fees. We REMAND to allow reconsideration of the fee award in this case given our decision.

---

**[39]** *See David S. v. Jared H.*, 308 P.3d 862, 874-75 (Alaska 2013) (upholding superior court's fee award against indigent litigants when court carefully examined whether fee award would deter similarity situated litigants from using courts and granted downward fee variance to account for such concerns); *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 595 (Alaska 2007) (affirming superior court's fee award against indigent pro se litigant when court accounted for litigant's status by "cutting the state's hourly billing rate in half").

BOLGER, Chief Justice, dissenting in part.

I agree with most of the court's opinion. But I disagree with the court's discussion regarding attorney's fees. I believe the superior court's analysis is more persuasive.

The statute the superior court relied on, AS 09.60.030, is in a series of three statutes addressing the liability of representative parties. These statutes should be read *in pari materia*[1] because they were enacted at the same time and they deal with the same subject matter.[2]

Alaska Statute 09.60.020 provides that "[a] person appointed guardian ad litem by a court for an infant or incompetent defendant is not liable for the costs of the action." This idea is carried over from a section of the territorial code dealing with the appointment of guardians ad litem. The code gave the court the authority "to appoint a guardian ad litem to any infant or insane defendant."[3] But a guardian ad litem was not required to shoulder any financial risk: "By such appointment such person shall not be rendered liable to pay costs of action[.]"[4]

Alaska Statute 09.60.030 provides: "When costs or disbursements are adjudged against an infant plaintiff or incompetent, the guardian by whom the plaintiff appeared in the action is responsible for the payment, and payment may be enforced against the guardian as if the guardian were the actual plaintiff." At the time of this enactment, and continuing to the present, AS 09.15.010 gave a parent the authority to

---

[1]    *Gillis v. Aleutians East Borough*, 258 P.3d 118, 121 n.8 (Alaska 2011).

[2]    Ch. 101, §§ 5.08, 5.09, 5.10, SLA 1962.

[3]    § 55-3-4 Alaska Compiled Laws Annotated (ACLA) (1949).

[4]    *Id.*

"maintain an action as plaintiff for the injury or death of a child."[5]  This section was carried over almost word for word from the territorial code.[6]

Historically, the term "next friend" designated a person empowered to file suit on behalf of a minor, and the term "guardian ad litem" was used (as in the territorial code) to designate a person appointed to defend an action against a minor.[7]  But this distinction was "only formal" and Alaska Civil Rule 17(c) (and its federal counterpart)[8] now allow suit to be brought on behalf of a minor by either a guardian ad litem or by a next friend.

Alaska Statute 09.60.040 allows costs to be awarded against a representative party such as "an executor, administrator, [or] trustee of an express trust." But the costs are "chargeable solely upon the estate, fund, or party represented."[9]  The language of this section does not specifically refer to a general guardian appointed by the court for the care and custody of a minor child,[10] but it could be read that way.  Again, this section was carried over almost word for word from the territorial code.[11]

In my opinion, these statutes must be read together within this historical context to provide for a comprehensive scheme for allocation of costs for representative

---

[5]     Ch. 101, § 30.01, SLA 1962.

[6]     § 55-11-64 ACLA (1949).

[7]     6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1572 (3d ed. 2018).

[8]     *Id.*

[9]     AS 09.60.040.

[10]    *See* AS 13.26.101-.186.

[11]    § 55-11-65 ACLA (1949).

parties. Alaska Statute 09.60.020 protects a guardian ad litem appointed by the court to represent a minor defendant who is brought into a lawsuit involuntarily. Alaska Statute 09.60.030 uses the term "guardian" generically to refer to a party who voluntarily decides to bring a lawsuit on behalf of a minor; in that case it is the guardian ad litem or next friend who is at risk for the costs and not the innocent minor. Alaska Statute 09.60.040 may protect a general guardian who has control over the estate of the ward, but that is not the situation we have here. My conclusion is that a next friend who brings suit on behalf of a minor party may be liable for costs under AS 09.60.030.

That is how we have applied this section in the past. In *Russell ex rel. J.N. v. Virg-In*,[12] a mother brought suit as next friend on behalf of her injured child. We reversed the superior court's order granting summary judgment against the minor, and so we also vacated the accompanying award of attorney's fees.[13] In doing so, we noted that "the provisions applicable to any attorney's fees or costs award in this case, where Russell brought the action on behalf of her minor child as the child's guardian, are Alaska Civil Rule 17(c) and AS 09.60.030."[14] The citation to Rule 17(c) recognized the authority of a minor to sue by "a next friend or by a guardian ad litem." And the citation to AS 09.60.030 recognized that this statute applies to a next friend who represents a minor plaintiff.

Likewise, in this case, the superior court correctly concluded that AS 09.60.030 applies to a next friend who sues on behalf of a minor plaintiff. I would affirm the superior court's order awarding costs and fees against Erin Kirkland.

---

[12] 258 P.3d 795 (Alaska 2011).

[13] *Id.* at 811.

[14] *Id.* (footnotes omitted).